UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOMINIC M. FRANZA,

                               Plaintiff,

        v.

TINA M. STANFORD; EDWARD M.
SHARKEY; OTIS CRUZE; SALLY
VELASQUEZ-THOMPSON; GAIL
HALLERDIN; WALTER WILLIAM
SMITH JR.,

                               Defendants.

No. 16-CV-7635 (KMK)

<u>OPINION AND ORDER</u>

---

<u>Appearances:</u>

Dominic M. Franza
Beacon, NY
*Pro Se Plaintiff*

Neil Shevlin, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Dominic M. Franza ("Plaintiff"), currently incarcerated at Fishkill

Correctional Facility, filed the instant Complaint, pursuant to 42 U.S.C. § 1983, against New

York State Board of Parole Chairwoman Tina M. Stanford ("Stanford") and Commissioners

Edward M. Sharkey ("Sharkey"), Otis Cruze ("Cruze"), Sally Velasquez-Thompson

("Velasquez-Thompson"), Gail Hallerdin ("Hallerdin"), and Walter William Smith, Jr. ("Smith")

(collectively, "Defendants").  (*See* Third Am. Compl. ("TAC") (Dkt. No. 60).)  Plaintiff alleges

that Defendants violated his rights under the Fourteenth and Eighth Amendments when they

determined his eligibility for parole, and evaluated his appeal of that determination, based upon an invalid decision-making procedure. (*See generally id.*)

Before the Court is Defendants' Motion To Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Defs.' Mot. To Dismiss (Dkt. No. 44); Mem. of Law in Support of Defs.' Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 45).) Defendants claim that Plaintiff's claims are barred by collateral estoppel, that the Complaint fails to state a claim, that his claim for damages is barred by *Heck v. Humphrey* and absolute immunity, and that Defendants are also entitled to qualified immunity. (*See generally* Defs.' Mem.) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Third Amended Complaint and documents attached to it, (TAC (Dkt. No. 60); Exhibits ("Ex.") (Dkt. No. 63)), Plaintiff's opposition to the Motion To Dismiss, (Opp. To Defs.' Mot. To Dismiss ("Pl.'s Opp.") (Dkt. No. 46); Mem. of Law in Supp. of Opp. To Defs.' Mot. To Dismiss ("Pl.'s Mem.) (Dkt. No. 47)), and various other papers submitted to the Court, (Letter from Plaintiff to Court (Oct. 6, 2017) (Dkt. No. 52); Letter from Plaintiff to Court (Oct. 30, 2017) (Dkt. No. 58); Letter from Plaintiff to Court (Dec 14, 2017) (Dkt. No. 68)), and are taken as true for the purpose of resolving the instant Motion.

### 1. The New York Parole Scheme

In 2011, the New York State Legislature amended the statute governing the functions, powers, and duties of the Board of Parole to read:

> The state board of parole shall . . . establish written procedures for its use in making parole decisions as required by law. Such written procedures shall *incorporate risk and needs principles* to measure the rehabilitation of persons appearing before the board, the likelihood of success of such persons upon release, and assist members

of the state board of parole in determining which inmates may be released to parole supervision.

N.Y. Exec. Law § 259-c(4) (emphasis added).[1]  (*See also* TAC ¶ 19.)  The same year, the

Legislature also amended the statute governing the procedures for the conduct of the work of the

Board of Parole:

> In making the parole release decision, the procedures adopted pursuant to [N.Y. Exec. Law. § 259-c(4)] of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department and any recommendation regarding deportation made by the commissioner of the department pursuant to section one hundred forty-seven of the correction law; (v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law; (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the presentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

---

[1] Another statute requires the Department of Corrections and Community Supervision ("DOCCS") to develop a "case management plan"—also known as a "transitional accountability plan"—for each inmate in order "to promote the rehabilitation of the inmate and their successful and productive reentry and reintegration into society upon release."  N.Y. Correct. Law § 71-a. This case management plan is developed at least in part through an inmate's "COMPAS," which is "a risk-assessment instrument used to 'inform decision-making throughout the various phases of incarceration and community supervision.'"  *Baker v. N.Y. State Dep't of Corr. and Comm. Superv.*, No. 17-CV-1270, 2018 WL 357297, at *3 n.4 (N.D.N.Y. Jan. 10, 2018) (quoting www.docsny.gov)).  (*See also* Defs.' Mem. 2 n.1 (describing COMPAS as a "risk and needs assessment"); Pl.'s Mem. 2 (describing COMPAS and the case management plan as "risk and needs assessment instrument[s]").)

N.Y. Exec. Law § 259-i(2)(C)(A).[2]  (*See also* TAC ¶ 20.)

In response to these statutory amendments, the Board of Parole filed a Notice of Proposed Rulemaking with the Secretary of the State of New York on December 18, 2013. (TAC ¶ 22.)  Two Assemblymen of the Legislature then wrote a letter to the Board of Parole, objecting that, contrary to legislative intent, the proposed rules "treat the [risk and needs assessment and case management plan] requirements of § 259-c(4) . . . as mere additional factors for consideration by the Parole Board" rather than as an overarching, "independent, evidence-based, objective evaluation" which "should inform the Board's analysis of [an inmate's] suitability for release."  (Ex. 2.)  "During the time frame for public comment . . . hundreds of letters condemning the proposed rules were made, which reiterated the Assembly's condemnation."  (TAC ¶ 29; *see also id.* ¶ 37 (same).)  However, on April 21, 2014, the Board of Parole adopted the rule by unanimous vote of all the Commissioners, including Defendants.  (*Id.* ¶ 24; Ex. 1 (certification of Stanford).)  The new rule provided that "[i]n making any parole release decision the following factors shall be considered": (1) the eight statutory factors listed in N.Y. Exec. Law § 259-i(2)(C)(A), and (2) other additional factors.  9 N.Y.C.R.R. § 8002.3 (2014).[3]  (*See also* TAC ¶ 25.)  Two of the additional factors were:

> (11) the most current risk and needs assessment that may have been prepared by the Department of Corrections and Community Supervision;

> (12) the most current case plan that may have been prepared by [DOCCS] pursuant to [§ 71-a] of the Correction Law.

*Id.* § 8002.3(11), (12).  (*See also* TAC ¶ 25; Ex. 2 (quoting § 8002.3(11), (12)); Pl.'s Mem. 2.)

---

[2] This version of the statute was enacted in 2011 N.Y. Sess. Laws Ch. 62 (S. 2812-C) (McKinney), Art. 8 § 201.  It was effective from March 31, 2011 until August 30, 2012, when it was revised again.

[3] This regulation has since been amended and renumbered.  It now is found in 9 N.Y.C.R.R. § 8002.2 (2017).

On May 2, 2016, a bill was introduced in the New York State Legislature to again amend § 259-c(4) and § 259-i(2)(c)(A) to emphasize that the Board of Parole must use risk and needs principles in its parole release decision making. (Ex. 6. ("Assembly Bill A9960").)[4] A memorandum in support of the proposed bill explained that it was needed to "make it clear to the Board that the Legislature wants an objective assessment of the risk to underlie all parole decisions," rather than as a "factor for consideration." (Ex. 7; *see also* Compl ¶ 34.) In August 2016, the Board of Parole held a meeting at which Stanford discussed a proposed revision to the rule in light of these objections. (TAC ¶ 35.)[5] Stanford explained that she personally had "added the COMPAS and case plan as factors in the regulation." (*Id.* ¶ 36.) She also noted that:

> What I think you'll find in reviewing the document . . . is that for the most part what's codified now in this document tracks what the law requires us to do and to be honest with you, in my opinion, tracks what we're already doing as a matter of course and practice. What this document does is highlight our adherence to the law.
> [. . . ]
> I think this is not, again, asking us to do something that we do not already [have] a duty to do but part of it is to do what the law requires we do and the other part of our responsibility and our state partner's responsibility with us is to educate the public on how we do our job.

(*Id.* ¶ 35.)

On September 28, 2016, the Board of Parole filed a Notice of Proposed Rulemaking for the amended rule. (*Id.* ¶ 38; Ex. 10.) An Assemblyman was later quoted in the New York Law Journal as saying that "[t]hey previously got it wrong, and I told them they got it wrong . . . but I

---

[4] It is unclear from Plaintiff's submissions whether this bill ever passed. As of May 24, 2016, it had not yet passed. (*See* Ex. 7.)

[5] Plaintiff attached a "[t]ranscript of [the] meeting prepared by a [f]amily member as best as possible" as an exhibit to the Complaint. (TAC ¶ 35.) Because he also copies portions of this "transcript" into the Complaint, the Court will cite to the Complaint instead.

will take the change of heart." (TAC ¶ 39.) On September 27, 2017, the Board of Parole officially amended the rule governing their parole release decision-making. (*Id.* ¶ 40.) The new rule notes that, in making a release determination, "the Board shall be guided by risk and needs principles," and "[t]he Board also shall consider the most current case plan that may have been developed . . . pursuant to [§] 71-a of the Correction Law." 9 N.Y.C.R.R. § 8002.2(a), (b). And, while it still requires the Board to consider all eight factors from § 259-i(2)(C)(A) in its release determination, the amended rule removes factors (11) and (12) from the last version—namely, the risk and needs assessment and the case plan—from the list of factors. *Id.* § 8002.2(d). (*See also* TAC ¶ 40 ("The unlawful additional factors 11 [COMPAS] and 12 [Case Plan] . . . have both been removed as factors."); Letter from Plaintiff to Court (Dec. 14, 2017) (Dkt. No. 68) (quoting the "Notice of Adoption" for § 8002.2 as stating, in "the Assessment of Public Comment section," that "the Board agrees [the risk and needs assessment] considerations are distinct from the statutory factors enumerated in . . . § 259-i(c)(A). Accordingly, the Board decided to clarify this . . .").)

### 2. The Denial of Plaintiff's Parole and Affirmation of the Denial on Appeal

Under New York law, release on parole is in the discretion of the Board of Parole. N.Y. Penal Law § 70.40(1)(a). "A person who is serving one or more than one indeterminate sentence of imprisonment may be paroled . . . at any time after the expiration of the minimum or the aggregate minimum period of the sentence or sentences . . . ." *Id.* § 70.40(1)(a)(i). Furthermore, "at least one month prior to that date on which an inmate may be paroled . . . a member or members . . . of the board shall personally interview such inmate and determine whether he should be paroled . . . ." N.Y. Exec. Law § 259-i(2)(a). (*See also* TAC ¶ 46 (describing sentencing and parole statutes).)

Plaintiff was incarcerated in 1992 and is serving two indeterminate sentences with an aggregate minimum sentence of 25 years. (Ex. 3 ("Interview") at 2; TAC ¶ 51.) *See* NYDOCCS, Inmate Information, http://nysdoccslookup.doccs.ny.gov (last visited Jan. 19, 2018) (DIN # 92A3659). On December 15, 2015, Defendants Smith, Velasquez-Thompson, and Hallerdin presided over Plaintiff's initial parole interview, asking him a series of questions. (TAC ¶ 31; Interview.) After deliberating, Smith, Velasquez-Thompson and Hallerdin rendered a decision denying Plaintiff parole and ordering him to be held for another 24 months, to re-appear in October 2017. (Interview 14.) They explained:

> After careful review and deliberation of your record and interview, this panel concludes that discretionary release is not presently warranted due to concern for the public's safety.
> Your release would be incompatible with the welfare of society and would so deprecate the serious nature of the offenses as to undermine respect for the law.
> Required statutory factors have been considered, including your risk to the community, rehabilitative efforts, your need for successful community re-entry, case plan, parole packet and opposition to your release.
> The following factors . . . were properly weighed and considered: Your instant offense of Attempted Murder 2nd, three counts, and Criminal Possession of a Weapon 1st involved you having a gunman pose as a florist deliveryman, shooting your wife and mother-in-law. The victims sustained serious physical injury. During [your] interview you denied involvement and denied any culpability in the instant offense.
> While incarcerated you have incurred several disciplinary infractions.
> Your positive programming is also duly noted. However, despite your accomplishments, when considering all relevant factors, discretionary release is not appropriate.

(Interview 14–15.) Defendants Smith, Velasquez-Thompson, and Hallerdin, conducted this hearing and rendered this decision "[w]hile knowingly and intentionally operating under an invalid and condemned parole decision-making procedure"—that is, the rules codified in § 8002.3. (TAC ¶ 31; *see also id.* ¶ 54 (alleging that Defendants "knowingly and intentionally subject[ed] [P]laintiff to an invalid and condemned parole eligibility determination process"); *id.*

¶ 56 (same).) Therefore, Plaintiff's "hearing was not in conformance with . . . [N.Y. Exec. Law] § 259-c(4) and § 259-i(2)(C)(A)." (*Id.* ¶ 31.)

Plaintiff filed an administrative appeal of the Board's decision, arguing, among other things, the proceeding violated his due process rights by including the 11th and 12th factors under § 8002.3. (TAC ¶ 32; Ex. 4.) "Fully knowing § 8002.3 was invalid as a matter of law, and condemned," Defendants Stanford, Sharkey, and Cruze, "on administrative appeal applied the same invalid decision-making procedure." (TAC ¶ 33; *see also id.* ¶¶ 58, 60 (alleging that Stanford, Sharkey, and Cruze "knowingly and intentionally subject[ed] [P]laintiff to an invalid and condemned parole eligibility determination process during the administrative appeal process).) After considering Plaintiff's brief, a statement of findings and recommendations from the Appeals Unit, the Presentence Investigation Report, Parole Board Report, Interview Transcript, Parole Board Release Decision, and Plaintiff's COMPAS and case plan, Defendants Stanford, Sharkey, and Cruze affirmed the Board's decision. (Ex. 5 ("Administrative Appeal Decision Notice").)[6]

As a result, Plaintiff, after "waiting 25 years for a chance to be considered for parole upon eligibility, adjudged under Constitutional and lawful procedures . . . [and] having COMPAS scores which greatly favored parole, was destroyed." (TAC ¶ 51; *see also id.* ¶¶ 54, 56, 58, 60 ("[D]efendants . . . destroyed [P]laintiff's possible chance to be lawfully paroled.").)[7]

_____

[6] The Appeals Unit explicitly considered, and rejected, Plaintiff's argument that his parole interview was invalid because it was conducted pursuant to § 8002.3, which violates N.Y. Exec. Law §§ 259-c(4), 259-i(2)(C)(A). (Administrative Appeal Decision Notice at Statement of Appeals Unit Findings & Recommendation 6–8.)

[7] In his COMPAS, Plaintiff received a "Supervision Status 4" and "low" and "unlikely" ratings in his risk assessment. (Ex. 18.) According to the DOCCS Directive governing the COMPAS and Case Plan, of which the Court takes judicial notice, "Status 4 is the least intensive" supervision status level. *See* DOCCS Directive No. 8500, "COMPAS Assessments/Case Plan" (Nov. 19, 2015).

This "caus[ed] [P]laintiff to languish in prison," and he experienced "[e]motional distress; mental anguish; headaches; loss of sleep; heightened anxiety, and . . . depression." (*Id.* ¶¶ 51–52.)

### 3. The Article 78 Proceeding

On June 1, 2016, Plaintiff instituted an Article 78 proceeding in the New York Supreme Court, Albany County "raising arguments identical to those filed in this Court." (Pl.'s Mem. 3; *see also* TAC ¶ 42 (same); Ex. 13 ("Article 78 Petition").) Specifically, Plaintiff argued that the application of § 8002.3 to his parole decision violated his federal procedural due process rights. (Article 78 Petition 11–13.) On January 13, 2017, the New York Supreme Court dismissed Plaintiff's Article 78 Petition. (Ex. 17 (*Franza v. Stanford et al.*, Index No. 3910-16 (N.Y. Sup. Ct. Jan. 13, 2017)) ("Article 78 Decision").) The Court noted that "the record reveals that the Board [of Parole] considered the pertinent statutory factors and followed the appropriate guidelines in denying [Plaintiff's] request for parole relief," and that it was "entitled" to "place[] a significant emphasis o[n] the gravity of the crime." (*Id.* at 2.) The Court concluded by responding to Plaintiff's arguments about § 8002.3:

> Petitioner argues that the Board failed to give sufficient weight to the COMPAS risk and needs assessment instrument. However, the Board considered the COMPAS instrument as one factor among several, in accordance with its established procedures for incorporating risk and needs principles into its decision-making process. (*See* [*Montane v. Evans*, 116 A.D.3d 197, 202–03, 981 N.Y.S.2d 866 (N.Y. App. Div. 2014)].) These procedures have been held to sufficiently comply with statutory directives. (*See id.*) Although petitioner points out that members of the Legislature have introduced bills in an effort to require the Board to accord greater weight to an inmate's risk and needs assessment, any such proposed legislation has yet to become law, and thus is not controlling.

*Id.*

B. Procedural Background

Plaintiff filed an initial Complaint against Cruze, Hallerdin, Sharkey, Smith, Stanford, and Velasquez-Thompson on September 29, 2016. (Compl. (Dkt. No. 1).) After receiving an extension of time to respond, (Dkt. No. 5), Defendants filed a pre-motion letter stating the grounds on which they would move to dismiss the Complaint, (Letter from Neil Shevlin, Esq. to Court (Dec. 19, 2016) (Dkt. No. 13)). Plaintiff opposed the request. (Letter from Plaintiff to Court (Dec. 27, 2016) (Dkt. No. 16).) The Court held a pre-motion conference on January 26, 2017. (*See* Dkt. (entry for Jan. 26. 2017).) Plaintiff filed a First Amended Compliant and accompanying exhibits on February 6, 2017. (First Am. Compl. (Dkt. No. 31).)

Defendants filed another pre-motion letter on March 3, 2017. (Letter from Neil Shevlin, Esq. to Court (Mar. 3, 2017) (Dkt. No. 36). Plaintiff opposed the request. (Letter from Plaintiff to Court (Mar. 20, 2017) (Dkt. No. 40).) Before the Court ruled on the pre-motion letter, Plaintiff filed a Second Amended Complaint and supplemental exhibits on March 20, 2017. (Second Am. Compl. (Dkt. No. 41).) On April 6, 2017, the Court set a briefing schedule on Defendants' Motion To Dismiss. (Dkt. No. 43.)

Defendants filed the Motion To Dismiss on May 8, 2017. (Notice of Mot (Dkt. No. 44); Defs.' Mem. (Dkt. No. 45).) On June 2, 2017, Plaintiff filed opposition papers. (Pl.'s Opp. (Dkt. No. 46); Pl.'s Mem. (Dkt. No. 47).) Defendants filed a reply memorandum in support of the Motion To Dismiss on June 30, 2017. (Reply Mem. of Law in Supp. of Defs.' Mot. To Dismiss the Am. Compl. ("Defs.' Reply") (Dkt. No. 48).) However, on October 6, 2017, Plaintiff requested leave to amend to supplement the Second Amended Complaint with the allegation that the Board of Parole amended § 8002.2 on September 27, 2017. (Letter from Plaintiff to Court (Oct. 6, 2017) (Dkt. No. 52).) Defendants opposed Plaintiff's request, (Letter from Neil Shevlin,

Esq. to Court (Oct. 20, 2017) (Dkt. No. 54)), and Plaintiff responded, attaching a proposed Third Amended Complaint (Letter from Plaintiff to Court (Oct. 30, 2017) (Dkt. No. 58)). The Court granted Plaintiff's request to amend and accepted the attached complaint "as Plaintiff's operative complaint," but noted that "[t]he Court construes the new complaint as adding only the factual allegation that the . . . Board of Parole amended 9 N.Y.C.R.R. § 8002.3, and not adding any new claims to Plaintiff's Complaint." (Dkt. No. 59.)

Plaintiff filed the operative Complaint, labeled "Third Amended Complaint," on November 2, 2017. (TAC (Dkt. No. 60).) However, Plaintiff wrote to the Court on November 17, 2017, requesting that the Court also consider additional exhibits he had not attached to his request to amend. (Letter from Plaintiff to Court (Nov. 17, 2017) (Dkt. No. 63) (referring to the exhibits attached to his November 17, 2017 letter).). The Court did not permit Plaintiff to file a new Complaint, (Dkt. No. 65), but ordered Defendants to file a letter if they objected to the Court's consideration of these exhibits when deciding the Motion To Dismiss, (Dkt. No. 69). Defendants filed a letter on January 8, 2018 indicating they did not object. (Letter from Neil Shevlin, Esq. to Court (Jan. 8, 2018) (Dkt. No. 70).) Defendants also filed a supplemental letter on December 1, 2017, with permission from the Court, (Dkt. No. 59), responding to the new allegation that the Board of Parole amended § 8002.2, (Letter from Neil Shevlin, Esq. to Court (Dec. 1, 2017) (Dkt. No. 67)).

## II.  Discussion

### A.  Standard of Review

Defendants move to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Notice of Defs.' Mot. To Dismiss; Defs.' Mem.) The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a

motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94

(2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted);

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the Plaintiff is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B.  Analysis

1.  Procedural Due Process Claim

a.  Collateral Estoppel

Defendants argue that Plaintiff is collaterally estopped from bringing his procedural due process claims because they were already litigated in the Article 78 proceeding.  (Defs.' Mem. 6–8.)[8]  Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit."  *Swiatkowski v. Citibank,* 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd,* 446 F.App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater,* 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (internal quotation marks omitted)). Federal courts must give the same preclusive effect to state court judgments as would be given by courts of the state itself, *see Hayes v. Cty. of Sullivan,* 853 F. Supp. 2d 400, 424 (S.D.N.Y. 2012), which means that New York law governs the preclusive effect of a prior Article 78 judgment on a § 1983 action in federal court, *see Ortiz v. Russo*, No. 13-CV-5317, 2015 WL 1427247, at *6 (S.D.N.Y. Mar. 27, 2015).  Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding."  *McKithen v. Brown,* 481 F.3d 89, 105 (2d Cir. 2007) (internal quotation marks omitted); *see also Hayes,* 853 F. Supp. 2d at 425 (same). "The party asserting issue preclusion bears the burden of showing that the identical issue was

─────────────

[8] This argument does not apply to Plaintiff's Eighth Amendment claim.

previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto,* 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

Plaintiff concedes that his Article 78 petition "rais[ed] arguments identical to those filed in this Court." (Pl.'s Mem. 3; *see also* TAC ¶ 42 ("With respect to [P]laintiff's . . . Article 78 proceeding . . . [P]laintiff raised the same contention herein").) However, he argues that the Article 78 judgment should not be afforded preclusive effect for three reasons. First, he argues that the New York Supreme Court did not adjudicate Plaintiff's procedural due process claim, and instead addressed a substantive due process argument he never raised—that the Board failed to give sufficient weight to the COMPAS risk and needs instrument. (Pl.'s Mem. 3, 8–10; *see also* Pl.'s Opp. ¶ 18).) Therefore, Plaintiff argues the Article 78 judgment is constitutionally infirm and owed no full faith and credit. (Pl.'s Mem. 10–11.) Second, Plaintiff argues that Defendants failed to satisfy their burden of showing what issue was decided in the Article 78 judgment, because they did not file an affidavit in support of the Motion To Dismiss. (*Id.* at 11; *see also* Pl.'s Opp. ¶ 37.) Third, Plaintiff contends that because the Article 78 judgment came *after* he initiated this Action, and because Defendants did not move for a stay in this Court, the judgment is not entitled to preclusive effect under New York law. (Pl.'s Mem. 11–12; *see also* Pl.'s Opp. ¶ 22.) The Court will address each of these arguments separately.

Plaintiff's Article 78 Petition argued that 9 N.Y.C.R.R. § 8002.3 violated his procedural due process rights by including the risk and needs principles and case plan as factors, in contravention of N.Y. Exec. Law §§ 259-c(4) and 259-i(2)(c)(A). (*See generally* Article 78 Petition.) He therefore requested that the New York Supreme Court declare § 8002.3

unconstitutional and annul the Board's denial of his parole. (*Id.* at 2.) The New York Supreme Court, in denying Plaintiff's petition, stated that "the record reveals that the Board considered the pertinent statutory factors [under § 259-i(2)(c)(A)] and followed the appropriate guidelines," and therefore the decision did not "evince[] irrationality bordering on impropriety." (Article 78 Decision 2–3 (internal quotation marks omitted).) Moreover, it noted that "the Board considered the COMPAS instrument as one factor among several, in accordance with its established procedures for incorporating risk and needs principles into its decision-making process," and that "[t]hese procedures have been held to sufficiently comply with statutory directives." (*Id.* at 3.) In so holding, the Court cited *Matter of Montane v. Evans*, 116 A.D.3d 197, 981 N.Y.S.2d 866 (App. Div. 2014), a case from the Third Department. (*Id.*) Plaintiff correctly points out that *Montane*, published March 13, 2014, pre-dates the Board's promulgation of the version of § 8002.3 that was applied to him, and thus could not have held that inclusion of factors 11 and 12 was proper. (TAC ¶ 43.) However, the Third Department did analyze the same New York *statutes* at issue here, and noted that (1) § 259-c(4) does not require the Board to promulgate formal written rules and regulations, and (2) the Board's decision to use the case management plan and the COMPAS, "together with the statutory factors set forth in . . . § 259-i," sufficiently complied with § 259-c(4)'s directive to "incorporate risk and needs principles" into the parole release decision. *Montane*, 116 A.D.3d at 200–03. Therefore, the New York Supreme Court's reliance on this case alone does not render its decision invalid or constitutionally infirm.[9]

Plaintiff argues that he never argued to the New York Supreme Court that the Board did

---

[9] To the extent Plaintiff disagrees with the New York Supreme Court's reliance on this case, he could appeal; this Court, however, does not sit as a court of appeal for the New York state courts.

not properly weigh his COMPAS, and therefore the Court did not decide his procedural due process claim. (*See* TAC ¶ 43.) However, he *did* argue that § 8002.3 incorrectly relegated "the risk and needs principles/assessments," which includes the COMPAS and the case plan, to additional factors. (Article 78 Petition ¶ 30.) And, by consequence, Plaintiff argued, as he does now, that these risk and needs principles were undervalued in his parole release determination. (*See, e.g.*, *id.* ¶ 27 (alleging that the legislature "did not want the risk and needs principles/assessments and case plan to be considered as factors"); *id.* ¶ 30 (alleging that "the Board of Parole's creation of additional factors is not in line with the spirit and intent of the amended statutes").) Thus, while the New York Supreme Court may have inartfully described Plaintiff's argument by naming only the COMPAS factor, its decision still responded to the thesis of Plaintiff's argument that he raises again here—that the Board improperly considered risk and needs principles, including his COMPAS, as *factors* rather than as an overarching principle which should inform the entire parole decisionmaking process.[10] (*E.g.* TAC ¶ 51 (noting that Plaintiff had "COMPAS scores which greatly favored parole").) Perhaps more fundamentally, Plaintiff's Article 78 petition, like his Third Amended Complaint, extensively details the legislative history of the statutes and regulation relevant here, and all of his arguments are based in the fundamental proposition that § 8002.3 violates the identified New York statutes. (*See generally* Article 78 Petition.) It therefore cannot seriously be contended that the New York Supreme Court's decision, which denied the petition and concluded that the Board's decision

---

[10] It is likely that the New York Supreme Court focused on COMPAS because Plaintiff's petition argued that the Appeals Unit incorrectly characterized his claim as arguing that "COMPAS/TAP are not mere factors . . . and the COMPAS was ignored" when evaluating his administrative appeal. (Article 78 Petition ¶ 47.) However, the Court notes that Plaintiff extensively describes the improper weighing of the COMPAS and case plan in the Third Amended Complaint. (*See* TAC ¶¶ 36, 51.)

was proper under New York's statutory scheme, did not necessarily decide that § 8002.3—at least in its application to Plaintiff, if not also on its face—was not unconstitutional or procedurally defective. *See Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002) (holding that the state court's rejection of the petitioner's argument, "clearly raised" in the petitioner's brief but not explicitly addressed by the court, was "necessary" to what the state court "explicitly decided," and therefore issue preclusion applied); *Davis v. Jackson*, No. 15-CV-5359, 2018 WL 358089, at *9 (S.D.N.Y. Jan. 8, 2018) ("[N]ot only did Plaintiff raise each of his discrete due process claims in the Article 78 proceedings, but in both instances, the state court necessarily rejected his claims by concluding on the merits that Plaintiff had not met his burden of establishing that the procedures used, or subsequent outcome, of either hearing constituted a violation of Plaintiff'[s] due process rights."); *McGowan v. Schuck*, No. 12-CV-6557, 2016 WL 4611249, at *10 (W.D.N.Y. Sept. 6, 2016) (finding that, "even though the Article 78 court did not precisely address each of the[] four issues" relating to due process raised by the plaintiff in federal court, the Article 78 court's "determination that the hearing was 'fair' functions as an actual decision on each of the issues"); *Leo v. New York City Dep't of Educ.*, No. 13-CV-2271, 2014 WL 6460704, at *6 (E.D.N.Y. Nov. 17, 2014) ("The prior decision of the issue need not have been explicit, however, if by necessary implication it is contained in that which has been explicitly decided. If the decision was implicitly necessary, it will be the basis for collateral estoppel." (alteration and internal quotation marks omitted)); *Linden Airport Mgmt. Corp. v. New York City Econ. Dev. Corp.*, No. 08-CV-3810, 2011 WL 2226625, at *7 (S.D.N.Y. June 1, 2011) (concluding that the state court "necessarily rejected" the plaintiff's due process claim because "the underlying and controlling factual issues are identical to those fully litigated in the Article 78 proceeding," even if the plaintiff styled the argument differently in federal court); *cf. Vargas*

*v. City of New York*, 377 F.3d 200, 206 (2d Cir. 2004) ("While it is true that the Article 78 court passed upon the propriety of [the plaintiff's] termination, this acknowledgment does not demonstrate that the court 'actually and necessarily' decided an issue that was never presented to it, even if that issue touched, in a general sense, on the propriety of the termination."). Put differently, the Article 78 decision, in dismissing Plaintiff's petition and concluding that he was correctly denied parole under New York law, already decided the issue of whether § 8002.3 violates Plaintiff's procedural due process rights, and he may not relitigate it in this Court.

Construing Plaintiff's submissions liberally, he may be arguing that he was denied a full and fair opportunity to litigate these issues, and thus the resulting Article 78 decision was "constitutionally infirm." (*See* Pl.'s Mem. 8–11.) However, that Plaintiff disagreed with the New York Supreme Court's description of his argument, or even the purported shallowness of its analysis, does not alone mean he was "denied . . . the guarantee to have the merits of the [p]rocedural [d]ue [p]rocess claim fairly judged," (*id.* at 9), or that the Court should have "no confidence" in the resulting judgment, (*id.* at 10.)[11] If Plaintiff disagreed with the New York Supreme Court's legal reasoning, his remedy was to appeal that judgment, not to relitigate it in federal court. Moreover, in light of the fact that Plaintiff submitted a petition with full briefing and a reply to the opposition papers, any allegation that Plaintiff was denied a full and fair opportunity to litigate his procedural due process claim is not plausible. *See Smart v. Gifford*,

---

[11] To the extent that Plaintiff is arguing that the New York Supreme Court made incorrect factual determinations that are not entitled to preclusive effect, he does not explain what those factual determinations were. (Pl.'s Mem. 7 ("This[] Court has consistently held that state factual determinations not fairly supported by the record cannot be conclusive of federal rights." (quoting *Townsend v. Sain*, 372 U.S. 293, 316 (1963))).) The New York Supreme Court's conclusion that the Board's actions, and the procedures it followed, complied with New York law is a legal, not factual one. Even if these were factual determinations, Plaintiff does not explain why they are not fairly supported by the record such that they are not entitled to preclusive effect in federal court.

No. 15-CV-8939, 2018 WL 401516, at *5 (S.D.N.Y. Jan. 12, 2018) ("Nor was [the] [p]laintiff denied a full and fair opportunity to litigate this issue, given that she, by counsel, submitted a petition supported by exhibits, as well as a brief and reply to the opposition papers."); *Ortiz*, 2015 WL 1427247, at *7 (finding an assertion "that [the plaintiff] was not given a full and fair opportunity to litigate the claims in the prior [Article 78] proceeding . . . would be without merit, given that he submitted a petition supported by exhibits, as well as a reply to the respondents' opposition papers"); *Carroll v. Callanan,* No. 05-CV-1427, 2008 WL 170204, at *3 (N.D.N.Y. Jan. 16, 2008) (holding that "[the plaintiff] had a full and fair opportunity to [litigate] by raising the issues . . . in multiple documents submitted during the course of his Article 78 proceeding").

Plaintiff's next argument—that Defendants failed to file an affidavit to satisfy their burden to show what was decided in the Article 78 judgment—fares no better. (Pl.'s Mem. 11; *see also* Pl.'s Opp. ¶ 37.) Plaintiff cites this Court's Local Rule 6.1(b)(1) as the origin of this requirement. (Pl.'s Opp. ¶ 4.) However, that Rule provides only that, for "all civil motions," "the notice of motion, supporting affidavits, and memoranda of law shall be served by the moving party on all other parties that have appeared in the action," and then sets deadlines for service of opposition and reply affidavits and memoranda. *See* S.D.N.Y. Local Rule 6.1(b)(1). The rule does not state that parties *must* file a supporting affidavit when filing a motion. Indeed, the Court ordinarily may not consider affidavits or affirmations when deciding a motion to dismiss; it must confine its decision to the complaint, documents attached to it or incorporated by reference into it, and matters subject to judicial notice. *See Leonard F.*, 199 F.3d at 107. Defendants argue in their memorandum in support of the Motion To Dismiss that the New York Supreme Court rejected Plaintiff's "claims concerning the formulation and adoption of § 8002.3 and its application to [P]laintiff in denying him parole release." (Defs.' Mem. 8.) This, without

an accompanying affidavit, satisfies their burden.  *See Colon*, 58 F.3d at 869 ("The party

asserting issue preclusion bears the burden of showing that the identical issue was previously

decided.")  Plaintiff cites no case or rule to the contrary.

Finally, Plaintiff argues that the Court cannot afford the Article 78 decision preclusive

effect because it was issued after he initiated this Action, and Defendants never moved the Court

for a stay pending resolution of his petition.  (Pl.'s Mem. 11–12; *see also* Pl.'s Opp. ¶ 22.)

However, Plaintiff cites no authority *requiring* Defendants to move for a stay merely because an

Article 78 proceeding is ongoing—particularly when it is Plaintiff, not Defendants, who initiated

this Action before receiving an Article 78 decision.  Indeed, courts have granted motions to

dismiss on collateral estoppel grounds because of an Article 78 decision published after the

federal lawsuit was initiated.  *See, e.g., Yu v. Knighted LLC*, No. 15-CV-9340, 2017 WL

666118, at *3, 7 (S.D.N.Y. Feb. 16, 2017) (finding collateral estoppel from Article 78 decision

issued after the plaintiff filed his federal complaint).  And, even if Defendants had moved for a

stay pending a decision from the New York Supreme Court, this Court would not have been

obligated to grant it.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S.

800, 813, 817 (1976) (holding that "the pendency of an action in the state court is no bar to

proceedings concerning the same matter in the Federal court having jurisdiction," and that only

in the "exceptional" case should a federal proceeding be stayed for that reason (internal quotation

marks omitted)); *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir. 1989) ("The decision as to

whether to stay a federal action on the ground that there is a related action pending in state court

is committed to the sound discretion of the district court.").

The Court therefore grants the Motion To Dismiss Plaintiff's procedural due process

claim on collateral estoppel grounds.

### b.  The Merits

In any event, even if not barred by collateral estoppel, Plaintiff's procedural due process claim fails.  "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (internal quotation marks omitted).   "The appropriate process depends on the balancing of three factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'"  *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017), *as amended* (July 18, 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As an initial matter, Plaintiff has "no liberty interest in parole, and the protections of the Due Process Clause are inapplicable."  *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (per curiam); *see also Sheppard v. New York State Div. of Parole*, No. 10-CV-5376, 2011 WL 2610695, at *3 (S.D.N.Y. June 28, 2011) (listing cases); *Loria v. Butera*, No. 09-CV-531, 2010 WL 3909884, at *5 (N.D.N.Y. Sept. 29, 2010) ("As such, because Plaintiff had no liberty interest in conditional parole re-release, any procedural infirmity did not give rise to a cognizable constitutional claim.").  However, even assuming Plaintiff has a liberty interest in receiving a *personal interview* to determine his parole eligibility under N.Y. Exec. Law § 259-i(2)(a), (*see* Pl.'s Mem. 17), he does not allege how the *process* he received was constitutionally defective, *see Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (explaining that, to determine whether the process provided "was constitutionally adequate," the court must "examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and

any remedies for erroneous deprivations provided by statute or tort law"); *id.* at 127–28

(analyzing when a pre or post-deprivation hearing is necessary); *cf. Victory v. Pataki*, 814 F.3d

47, 63 (2d Cir. 2016) (explaining that procedural due process requires "the opportunity to be

heard at a meaningful time and in a meaningful manner," which includes "that the decision be

issued by a neutral and detached hearing body such as a traditional parole board and supported

by at least some evidence" (internal quotation marks omitted)).  The fact that § 8002.3 violates

New York law alone does not mean its application violates the Due Process Clause.  As one

court explained in a case also challenging the application of the § 259-i(2)(c)(A) factors:

> Essentially, plaintiff conflates a potential state law claim with a non-existent constitutional claim.  Plaintiff may be correct that a blanket policy denying parole to all violent felons violates existing state law; however, constitutional and state law claims are not inherently coextensive.  While the Parole Board is afforded wide latitude in making its parole determinations under the Due Process Clause, state law might further limit the Board's discretion. . . . However, to the extent that plaintiff has a potential state law claim against defendants, § 1983 is not the proper vehicle, and this Court is not the proper venue, for vindicating such a claim.  Adjudicating the merits of plaintiff's claim would require a determination of the contours of a state law, and resolution of the question of the proper meaning and significance of the New York parole law is best left to the New York courts.
> [. . .]
> The argument that a disregard of governing state law inherently renders a parole decision arbitrary or procedurally flawed proves too much. If such an argument were accepted, every state law requirement would ipso facto be incorporated into federal constitutional law.

*Mathie v. Dennison*, No. 06-CV-3184, 2007 WL 2351072, at *7–8 (S.D.N.Y. Aug. 16, 2007)

(alterations, citations, and internal quotation marks omitted), *aff'd*, 381 F. App'x 26 (2d Cir.

2010); *see also Graziano v. Pataki*, 689 F.3d 110, 116 (2d Cir. 2012) (quoting *Mathie* in holding

that "even if New York State implemented an official policy denying parole to all violent

offenders, such a policy would not violate the Due Process Clause even if the policy were adopted or implemented in violation of state law").[12]

To the extent Plaintiff believes these cases are inapposite because he is making a procedural, not substantive, due process claim, or because he is challenging only the procedures used, but not the actual parole denial decision itself, he simply identifies no *process* of which he was deprived. (*See, e.g.*, Pl.'s Mem. 14, 15, 17; Pl.'s Opp. ¶¶ 51–52.) Plaintiff received an interview at which he was asked multiple questions. (*See* Interview.) After deliberating, the interviewing Defendants explained the factors it "weighed and considered," and decided discretionary release was not appropriate due to safety concerns. (*Id.* at 14–15.) Similarly, the Defendants considering Plaintiff's appeal evaluated the record and Plaintiff's brief before affirming the Board's decision. (*See* Administrative Appeal Decision Notice.) That these applications of § 8002.3 may have violated New York law by improperly considering risk and needs principles as factors rather than as overarching principles does not render the process Plaintiff received inherently unfair or procedurally improper under the Constitution. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 16 (1979) ("The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more."); *Tatta v. Miller*, No. 05-CV-1205, 2005 WL 2806236, at *3 (E.D.N.Y. Oct. 27, 2005) ("[T]he denial of

_____

[12] Construing Plaintiff's submissions liberally, he may also be asserting that Defendants deprived him of procedural due process by adopting § 8002.3, which was then applied to him. (*See* Pl.'s Mem. 14.) Defendants do not argue that such a claim was decided in the Article 78 decision. However, such a claim suffers from the same defect identified above: Plaintiff alleges no facts suggesting that he was deprived of any constitutionally required process before being interviewed or denied parole.

Tatta's application for parole comported with procedural due process, which, in this context, requires only that the inmate be given an opportunity to be heard and informed of the reasons for the denial of parole.").[13]  Nor does the due process analysis change merely because the Board of Parole later amended § 8002.3—now § 8002.2—to remedy the defects alleged by Plaintiff, as those defects are under state, not federal, law.  (*Contra* Letter from Plaintiff to Court (Oct. 6, 2017) (Dkt. No. 52); Letter from Plaintiff to Court (Dec. 14, 2017) (Dkt. No. 68).)

### 2.  Eighth Amendment Claim

Defendants argue that Plaintiff fails to plausibly allege an Eighth Amendment violation. (Defs.' Mem. 11.)  Construing Plaintiff's submissions liberally, he alleges two ways Defendants violated his Eighth Amendment rights: (1) by knowingly and intentionally subjecting Plaintiff to an invalid parole decision-making process, which constituted "cruel and unusual punishment," (TAC ¶¶ 54, 58), and (2) by denying Plaintiff parole and making him wait two more years for another parole interview, thereby extending his sentence, (*id.* ¶ 51; Pl.'s Mem. 18–19).  Neither allegation plausibly states an Eighth Amendment claim.

"The Eighth Amendment . . . prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes," including deprivations "suffered during imprisonment," provided that they involve "the unnecessary and wanton infliction of pain."  *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991) (citation and internal quotation marks omitted).  The Supreme Court has

---

[13] The Court also notes that Defendants are entitled to absolute immunity from Plaintiff's damages claims to the extent they stem from Defendants' decision to deny Plaintiff parole.  *See Victory*, 814 F.3d at 66 ("It is well established that parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole." (internal quotation marks omitted)); *id.* (concluding that the defendant "was entitled to absolute immunity for any actions taken while performing the quasi-judicial function of adjudicating whether to rescind [the plaintiff's] parole").

defined such "unnecessary and wanton inflictions of pain" as "those that are 'totally without penological justification.'" *Hope v. Pelzer*, 536 U.S. 730, 737 (2002). Although Plaintiff asserts that the application of § 8002.2 subjected him to "cruel and unusual punishment," he alleges no facts substantiating this conclusory allegation. (TAC ¶¶ 54, 58.) He does not allege that the interview process involved any application of pain or another serious deprivation of a necessity, such as food, medical care, or safety, nor does he allege that the process was without penological justification. *See Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) ("Under . . . the Eighth . . . Amendment[], to establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." (internal quotation marks omitted)). Indeed, Plaintiff alleges that he had a *right* to the interview. (Pl.'s Mem. 17.) Therefore, the allegation that Defendants subjected Plaintiff to an invalid process alone is insufficient to state an Eighth Amendment claim.

Plaintiff also alleges that the Defendants intentionally denied Plaintiff parole eligibility, thereby extending his sentence, in order to punish him.[14] (TAC ¶ 51; Pl.'s Mem. 18–19.) The Eighth Amendment does, in some circumstances, proscribe detention or incarceration beyond a lawfully imposed sentence. *See Sudler v. City of New York*, 689 F.3d 159, 169 n.11 (2d Cir. 2012) ("We have suggested in the past, and other courts within and without this Circuit have held, that detention beyond that authorized by law may violate the Eighth Amendment."); *Brunson v. Duffy*, 14 F. Supp. 3d 287, 292–93 (S.D.N.Y. 2014) (collecting cases). However, the

---

[14] The Court notes the tension between Plaintiff's assertions that his "[Eighth] Amendment claim has nothing to do with an extension of the maximum sentence" and that Defendants' use of an invalid parole eligibility procedure "caus[ed] [P]laintiff's sentence to be extended two years." (Pl.'s Mem. 18; *see also* TAC ¶ 51.) However, if Plaintiff is not alleging that the denial of parole resulted in a functional extension of his sentence, and therefore in punishment, the Court is unsure of what his Eighth Amendment claim is, aside from a regurgitation of his procedural due process claim.

denial of parole at Plaintiff's first interview, and the subsequent requirement that he wait two more years before his next eligibility interview, did not extend his sentence. Although his minimum sentence was 25 years, his maximum sentence is 50 years from 1992—a date that has not yet passed. (*See* Interview at 2; TAC ¶ 51.) *See also* NYDOCCS, Inmate Information, http://nysdoccslookup.doccs.ny.gov (last visited Jan. 19, 2018) (DIN # 92A3659). Therefore, Plaintiff fails to plausibly allege an Eighth Amendment claim, even if the discretionary denial of his parole was intentional. *See D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *10 (S.D.N.Y. Dec. 19, 2017) (holding that the plaintiff failed to state an Eighth Amendment Claim because he "was not held beyond his *maximum* sentence"); *Williams v. Carpenter*, 214 F. Supp. 3d 197, 202 (W.D.N.Y. 2016) ("A denial of parole or early release does not constitute cruel or unusual punishment, within the meaning of the Eighth Amendment."); *Sheppard*, 2011 WL 2610695, at *4 ("[T]he mere fact that [Plaintiff] has been denied parole does not violate any provision of the Constitution, much less the Eighth Amendment." (citations omitted)).

The Court therefore grants Defendants' Motion To Dismiss Plaintiff's Eighth Amendment claim. [15]

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal of Plaintiff's Eighth Amendment claim is without prejudice. [16] If Plaintiff wishes to file an Fourth Amended

---

[15] Because the Court already dismissed both the Fourteenth Amendment and Eighth Amendment claims, it need not reach Defendants' alternative arguments that they are entitled to qualified immunity or that Plaintiff's damages claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (Defs.' Mem. 11–13.)

[16] The dismissal of Plaintiff's Fourteenth Amendment claim, however, is with prejudice, because an amended pleading cannot cure the fact that Plaintiff is collaterally estopped from

Complaint, Plaintiff should include within that Fourth Amended Complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The amended complaint will replace, not supplement, the original complaint. The amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, affidavits, or memoranda. If Plaintiff fails to abide by the 30-day deadline, this Action may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 44), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: February 14 , 2018
      White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

bringing the claim in federal court. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that repleading would have been futile because the problem with the plaintiff's causes of action was substantive and "better pleading [could] not cure it").