UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOMINIC M. FRANZA,

                              Plaintiff,

            v.

TINA M. STANFORD; EDWARD M.
SHARKEY; OTIS CRUZE; SALLY
VELASQUEZ-THOMPSON; GAIL
HALLERDIN; WALTER WILLIAM
SMITH, JR.,

                              Defendants.

No. 16-CV-7635 (KMK)

OPINION AND ORDER

Appearances:

Dominic M. Franza
Beacon, NY
*Pro Se Plaintiff*

Neil Shevlin, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Dominic M. Franza ("Plaintiff"), currently incarcerated at Fishkill Correctional Facility, filed the instant Fourth Amended Complaint, pursuant to 42 U.S.C. § 1983, against New York State Board of Parole Chairwoman Tina M. Stanford ("Stanford") and Commissioners Edward M. Sharkey ("Sharkey"), Otis Cruze ("Cruze"), Sally Velasquez-Thompson ("Velasquez-Thompson"), Gail Hallerdin ("Hallerdin"), and Walter William Smith, Jr. ("Smith") (collectively, "Defendants"). (*See* Fourth Am. Compl. ("FAC") (Dkt. No. 80).) Plaintiff alleges that Defendants violated his rights under the Fourteenth and Eighth

Amendments when they determined his eligibility for parole, and evaluated his appeal of that determination, based upon an invalid decision-making procedure. (*See generally id.*)

Before the Court is Defendants' Motion To Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot. To Dismiss ("Defs.' Mot.") (Dkt. No. 85); Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 86).) Defendants argue that Plaintiff's claims are barred by collateral estoppel, that the Fourth Amended Complaint fails to state a claim, that his claim for damages is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and the Eleventh Amendment of the U.S. Constitution, and that Defendants are entitled to absolute and qualified immunity. (*See generally* Defs.' Mem.) For the following reasons, Defendants' Motion is granted.

## I. Background

The Court assumes the Parties' familiarity with the factual and procedural history of this case, as described in *Franza v. Stanford*, No. 16-CV-7635, 2018 WL 914782, at *1–6 (S.D.N.Y. Feb. 14, 2018). (*See* (Op. & Order ("Opinion") 2–11 (Dkt. No. 71).) The Court here summarizes only background information necessary to resolve the instant Motion.

### A. The New York Parole Scheme

In 2011, the New York State Legislature amended the statute governing the functions, powers, and duties of the New York Board of Parole (the "Board"), requiring that its "written procedures for . . . making parole decisions . . . shall incorporate risk and needs principles . . . ." N.Y. Exec. Law § 259-c(4). The same year, the Legislature also amended the statute governing the procedures for the conduct of the work of the Board, mandating that the procedures adopted pursuant to § 259-c(4) require the Board to consider eight enumerated factors. *Id.*

§ 259-i(2)(C)(A).[1] In response to these statutory amendments, the Board filed a Notice of Proposed Rulemaking with the Secretary of the State of New York on December 18, 2013. (FAC ¶ 20; FAC Ex. 1 ("Notice of Proposed Rule Making").) Two Assemblymen of the Legislature then wrote a letter to the Board, objecting that, contrary to legislative intent, the proposed rules "treat the [risk and needs assessment and case management plan] requirements of § 259-c(4) . . . as mere additional factors for consideration by the Parole Board," rather than as an overarching, "independent, evidence-based, objective evaluation" which "should inform the Board's analysis of [an inmate's] suitability for release." (FAC Ex. 2 ("Jan. 21, 2014 Letter").) Nevertheless, on April 21, 2014, the Board adopted the rule by a unanimous vote of all members, including Defendants. (FAC ¶ 25; FAC Ex. 3 ("Certification").) The new rule provided that "[i]n making any parole release decision the following factors shall be considered": (1) the eight statutory factors listed in N.Y. Exec. Law § 259-i(2)(C)(A), and (2) other additional factors, including "the most current risk and needs assessment" and "the most current case plan" prepared by the New York Department of Corrections and Community Supervision ("DOCCS"). (FAC ¶ 26.) *See* 9 N.Y.C.R.R. § 8002.3 (2014) (listing the latter two factors as numbers 11 and 12).[2]

On May 2, 2016, a bill was introduced in the New York State Legislature to again amend § 259-c(4) and § 259-i(2)(C)(A) to emphasize that the Board must use risk and needs principles in its overall parole release decision making, rather than as mere factors. (FAC Ex. 4 ("2016 Bill"); FAC Ex. 5 ("Accompanying Memorandum").) A year later, after noting the objections to

---

[1] This version of the statute was enacted in 2011 N.Y. Sess. Laws ch. 62 (S. 2812-C) (McKinney), Art. 8 § 201. It was effective from March 31, 2011 until August 30, 2012, when it was revised again.

[2] This regulation has since been amended and renumbered. It is now found in 9 N.Y.C.R.R. § 8002.2 (2017).

the existing rule at a meeting, the Board officially amended the rule governing their parole release decision-making. (FAC ¶ 33; FAC Ex. 11 ("Notice of Adoption").) The new rule notes that, in making a release determination, "the Board shall be guided by risk and needs principles," and "[t]he Board also shall consider the most current case plan that may have been developed . . . pursuant to [§] 71-a of the Correction Law." 9 N.Y.C.R.R. §§ 8002.2(a), (b) (2017). The amended rule removes factors (11) and (12)—the risk and needs assessment and the case plan— from the list of factors. *See id.* § 8002.2(d). (*See* FAC ¶ 33.)

### B. Application to Plaintiff

As a prisoner serving two indeterminate sentences, *see* DOCCS, Inmate Information, http://nysdoccslookup.doccs.ny.gov (last visited Jan. 30, 2018) (DIN # 92A3659), Plaintiff was entitled to a personal interview with members of the Board to determine whether he was eligible for parole at least one month prior to the expiration of his aggregate minimum sentence—25 years, *see* N.Y. Penal Law § 70.40(1)(a)(i) (date of parole eligibility for prisoners serving indeterminate sentences); N.Y. Exec. Law § 259-i(2)(a) (date of parole eligibility interview). On December 15, 2015, Defendants Smith, Velasquez-Thompson, and Hallerdin presided over Plaintiff's parole interview, asking him a series of questions. (FAC ¶ 37; FAC Ex. 12 ("Interview").) After deliberating, Smith, Velasquez-Thompson, and Hallerdin rendered a decision denying Plaintiff discretionary parole and ordering him to be held for another 24 months, and to re-appear in October 2017. (Interview 14.) They explained that the following factors weighed against Plaintiff's release: the serious nature of his offenses, the fact that "[t]he victims sustained serious physical injury," that Plaintiff "denied involvement and denied any culpability" during the interview, and that he "incurred several disciplinary infractions" in prison. (*Id.* at 14–15.) According to Plaintiff, Defendants Smith, Velasquez-Thompson, and

Hallerdin conducted this hearing and rendered this decision "[w]hile knowingly and intentionally refusing to follow N.Y. State procedure"—that is, by applying the rules codified in § 8002.3 despite its alleged conflict with § 259-c(4), § 259-i(2)(a), and § 259-i(2)(C)(A). (FAC ¶ 37; *see also id.* ¶¶ 43, 46 (same).)

Plaintiff filed an administrative appeal of the Board's decision, arguing, among other things, that the proceeding violated his due process rights by including the 11th and 12th factors in § 8002.3. (FAC ¶ 38; FAC Ex. 13 ("Administrative Parole Appeal Brief").) After considering a variety of documents, including Plaintiff's brief, Defendants Stanford, Sharkey, and Cruze affirmed the Board's decision. (*See* FAC Ex. 14 ("Administrative Appeal Report and Recommendation").) In doing so, they allegedly "refus[ed] to follow N.Y. State procedure." (FAC ¶ 39; *see also id.* ¶¶ 49, 52 (alleging that they did so "knowingly and intentionally" and with "malice and oppression").)

On June 1, 2016, Plaintiff instituted an Article 78 proceeding in the New York Supreme Court, Albany County, "raising arguments identical to those in this federal case," including that application of § 8002.3 to his parole decision violated his federal procedural due process rights. (Opinion 9; *see also* Pl.'s Mem. 4; Plaintiff's Letter to Court (November 17, 2017) ("Pl.'s Letter") Ex. 13 ("Article 78 Petition") 11–15.)[3] On January 13, 2017, the New York Supreme

---

[3] Plaintiff notably removed allegations relating to the Article 78 Petition from his Fourth Amended Complaint, and included no exhibits in connection with the state court proceeding. Nevertheless, Plaintiff has previously submitted documents relating to the Article 78 Petition and Decision, and both Parties discuss them in their memoranda, (*see* Pl.'s Mem. 4–5, 8–11; Defs.' Mem. 4–5, 10–11), indicating that they are "integral" to Plaintiff's claims, s*ee Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (finding district court could consider documents of which the plaintiffs had notice and which were "integral" to their claim in ruling on motion to dismiss even though those documents were not incorporated into the complaint by reference). Additionally, the state court documents relating to the Article 78 Proceeding are public records. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to

Court dismissed Plaintiff's Article 78 Petition. (*See* Pl.'s Letter Ex. 17 (*Franza v. Stanford et al.*, Index No. 3910-16 (N.Y. Sup. Ct. Jan. 13, 2017)) ("Article 78 Decision").) The court found that "the record reveals that the Board [of Parole] considered the pertinent statutory factors and followed the appropriate guidelines in denying [Plaintiff]'s request for parole release," and that the Board's consideration of "the COMPAS instrument as one factor among several [was] in accordance with its established procedures for incorporating risk and needs principles into its decision-making process," which "ha[s] been held to sufficiently comply with statutory directives." (*Id.* at 2–3.)

C.  Procedural History

Plaintiff filed his initial Complaint on September 29, 2016, (Compl. (Dkt. No. 1)), and subsequently has filed several amended complaints, (First Am. Compl. (Dkt. No. 31); Second Am. Compl. (Dkt. No. 41); Third Am. Compl. (Dkt No. 60)), including the operative Fourth Amended Complaint on May 16, 2018, (FAC). On February 14, 2018, the Court dismissed Plaintiff's Third Amended Complaint, dismissing Plaintiff's Fourteenth Amendment claims with prejudice on collateral estoppel grounds, but noting that Plaintiff also failed to state a claim, and dismissing Plaintiff's Eighth Amendment claim without prejudice, giving Plaintiff 30 days to amend. (*See generally* Opinion.) On March 1, 2018, Plaintiff filed a motion for reconsideration, requesting reconsideration of the collateral estoppel ruling. (Dkt. Nos. 72, 73.) On March 12,

---

dismiss under Rule 12(b)(6), including case law and statutes."). Therefore, the Court will consider them for purposes of deciding this Motion. *See Harrison v. Diamonds*, No. 14-CV-484, 2014 WL 3583046, at *2 (S.D.N.Y. July 18, 2014) ("Courts can take notice of the public records from earlier actions 'not for the truth of the matters asserted but rather to establish the fact of such litigation and related filings.'" (alteration omitted) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))); *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 352 (E.D.N.Y. 2010) (taking judicial notice of "public documents filed in connection with" proceedings in a different court on a motion to dismiss where the defendants raised res judicata as an affirmative defense).

2018, Defendants filed an opposition to the motion. (Dkt. No. 74.) On March 13, 2018, Plaintiff filed an "addendum memorandum" in further support of the motion, (Dkt. No. 75), and on March 26, 2018, filed a reply memorandum, (Dkt. No. 77).

On April 26, 2018, the Court issued an Order granting in part and denying in part Plaintiff's motion for reconsideration. (*See* Order (Dkt. No. 79).) With respect to the collateral estoppel ruling, the Court denied Plaintiff's motion with respect to the implementation and application of § 8002.3, explaining that the Court "found that the Article 78 court already decided the question of whether Plaintiff's federal due process rights were violated . . . and thus it cannot be relitigated in this Court." (Order 12.) However, with respect to Plaintiff's "separate procedural due process claim based on Defendants' formulation and adoption of § 8002.3," the Court stated that "although the Court clearly determined that Plaintiff raised this claim in his Article 78 petition, and that the Article 78 Court 'necessarily decide[d] that § 8002.3—at least in its application to Plaintiff, if not also on its face—was not unconstitutional or procedurally defective,'" Plaintiff correctly noted that "the Court inadvertently (and incorrectly) stated in a later footnote that 'Defendants do not argue that such a claim was decided in the Article 78 decision.'" (*See* Order 13 (citations omitted).) The Court therefore allowed Plaintiff to amend his Fourteenth Amendment claim "*solely* with respect to Defendants' formulation and adoption of § 8002.3." (*Id.*)

Plaintiff filed the Fourth Amended Complaint on May 16, 2018. (*See* FAC.) On July 12, 2018, Defendants moved to dismiss the Fourth Amended Complaint. (*See* Defs.' Mot.; Defs.' Mem.) Plaintiff filed an Opposition to the Motion on August 3, 2018, (*see* Pl.'s Mem. in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 90)), and Defendants filed a Reply on October 24, 2018, (Defs.' Reply Mem. in Further Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 95)).

7

II. Discussion

A. Standard of Review

Defendants move to dismiss the Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mem.) The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P.

8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted);

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the plaintiff is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010)

9

(italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

## B. Analysis

### 1. Procedural Due Process Claim

#### a. Collateral Estoppel

In light of the Court's Order on Plaintiff's motion for reconsideration, Defendants now "repeat the argument they raised" in their prior motion to dismiss that Plaintiff is collaterally estopped from bringing his procedural due process claims based on the formulation and adoption of § 8002.3 because they were already litigated in the Article 78 proceeding. (Defs.' Mem. 8–11.)[4] As explained in the Court's Opinion, collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (quotation marks omitted), *aff'd,* 446 F. App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (quotation marks omitted)). Federal courts must give the same preclusive effect to state court judgments as would be given by courts of the state itself, *see Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 424 (S.D.N.Y. 2012), which means that New York law governs the preclusive

---

[4] This argument does not apply to Plaintiff's Eighth Amendment claim.

effect of a prior Article 78 judgment on a § 1983 action in federal court, *see Ortiz v. Russo*, No. 13-CV-5317, 2015 WL 1427247, at *6 (S.D.N.Y. Mar. 27, 2015). Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007) (quotation marks omitted); *see also Hayes,* 853 F. Supp. 2d at 425 (same). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

Plaintiff concedes that he, "in the Article 78 proceeding, . . . challenged the formulation and adoption of § 8002.3, on its face." (Pl.'s Mem. 10.) However, he argues that he should not be precluded from raising the argument here because the Article 78 Decision addressed "pure questions of law," which are not entitled to preclusive effect. (*See id.*) *See also McGrath v. Gold*, 330 N.E.2d 35, 38 (N.Y. 1975) ("[C]ollateral estoppel does not apply to an unmixed question of law." (citing *United States v. Moser*, 266 U.S. 236, 242 (1924) ("The contention of the government seems to be that the doctrine of res judicata does not apply to questions of law; and, in a sense, that is true. It does not apply to unmixed questions of law. . . . But a *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law."))).

Defendants correctly note that Plaintiff raised this exact argument in his motion for reconsideration, and that the Court rejected it. (*See* Order 11 ("Contrary to Plaintiff's interpretation, the Court did not conclude that the entire Article 78 decision was a pure legal conclusion in its Opinion.").) As the Court explained, "the Article 78 court found, *based on the factual record*, that the Board did not improperly consider risk and needs principles as factors rather than as an overarching principle, and therefore squarely decided the issue presented here—whether § 8002.3 as applied to Plaintiff denied him procedural due process." (*Id.*) Furthermore, the Court "clearly determined that Plaintiff raised this claim [regarding the formulation and adoption of § 8002.3] in his Article 78 petition" and that the Article 78 court necessarily decided it "at least in its application to Plaintiff, if not also on its face," but allowed Plaintiff to amend his claim with respect to the formulation and adoption of § 8002.3, in light of his pro se status and the Court's inadvertent statement that Defendants had not argued that the claim was decided in the Article 78 Decision. (*Id.* at 13.)

Additionally, it is clear from the Article 78 Decision that the court considered and rejected Plaintiff's argument that the formulation and adoption of § 8002.3 was defective. With respect to the Parole Board's adoption of § 8002.3 despite ongoing objections by members of the Legislature, the Article 78 Decision notes, "[a]lthough petitioner points out that members of the Legislature have introduced bills in an effort to require the Board to accord greater weight to an inmate's risk and needs assessment, any such proposed legislation has yet to become law, and thus is not controlling." (Article 78 Decision 3.) The Article 78 court therefore necessarily considered the legislative history of § 8002.3 and Plaintiff's argument that the Legislature disagreed with its formulation and adoption, and nonetheless found that the Board's actions did not violate Plaintiff's procedural due process rights. (*See* Opinion 17 ("Plaintiff's Article 78

12

petition, like his Third Amended Complaint, extensively details the legislative history of the statutes and regulation relevant here, and all of his arguments are based on the fundamental proposition that § 8002.3 violates the identified New York statutes."). *See also Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002) (holding that issue preclusion applied where the state court's rejection of the petitioner's argument, "clearly raised" in the petitioner's brief but not expressly addressed by the court, was "necessary" to what the state court "explicitly decided"); *Davis v. Jackson*, No. 15-CV-5359, 2018 WL 358089, at *9 (S.D.N.Y. Jan. 8, 2018) ("[N]ot only did [the] [p]laintiff raise each of his discrete due process claims in the Article 78 proceedings, but in both instances, the state court necessarily rejected his claims by concluding on the merits that [the] [p]laintiff had not met his burden of establishing that the procedures used, or subsequent outcome, of either hearing constituted a violation of [the] [p]laintiff'[s] due process rights."); *Leo v. N.Y.C. Dep't of Educ.*, No. 13-CV-2271, 2014 WL 6460704, at *6 (E.D.N.Y. Nov. 17, 2014) ("The prior decision of the issue need not have been explicit, however, if by necessary implication it is contained in that which has been explicitly decided." (alteration and quotation marks omitted)).

The Court therefore grants the Motion To Dismiss Plaintiff's procedural due process claim on collateral estoppel grounds.

### b. The Merits

In any event, even if not barred by collateral estoppel, Plaintiff's procedural due process claim based on the formulation and adoption of § 8002.3 fails on the merits. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (quotation marks omitted). "The appropriate

13

process depends on the balancing of three factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017), *as amended* (July 18, 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As an initial matter, Plaintiff has "no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (per curiam); *see also Sheppard v. N.Y.S. Div. of Parole*, No. 10-CV-5376, 2011 WL 2610695, at *3 (S.D.N.Y. June 28, 2011) (collecting cases); *Loria v. Butera*, No. 09-CV-531, 2010 WL 3909884, at *5 (N.D.N.Y. Sept. 29, 2010) ("[B]ecause [the] [p]laintiff had no liberty interest in conditional parole re-release, any procedural infirmity did not give rise to a cognizable constitutional claim."). However, even assuming Plaintiff has a liberty interest in receiving a *personal interview* to determine his parole eligibility under N.Y. Exec. Law § 259-i(2)(a), (*see* Pl.'s Mem. 17), he still does not allege how the *process* he received was constitutionally defective, *see Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (explaining that, to determine whether the process provided "was constitutionally adequate," the court must "examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law"); *id.* at 127–28 (analyzing when a pre or post-deprivation hearing is necessary); *cf. Victory v. Pataki*, 814 F.3d 47, 63 (2d Cir. 2016) (explaining that procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner," which includes "that the decision

be issued by a neutral and detached hearing body such as a traditional parole board and supported by at least some evidence" (quotation marks omitted)).

Plaintiff argues that because § 8002.3 was not formulated and adopted in accordance with § 259-c(4) and § 259-i(2)(C)(A), his parole decision applying § 8002.3 "did not provide the process due, an overarching, independent, evidence-based objective evaluation, during the evaluation phase." (Pl.'s Mem. 20–21.) Plaintiff's argument implies that the Legislature's intent that the requirements of § 259-c(4) be applied as "an independent, evidence-based, objective evaluation" rather than as merely additional factors for consideration by the Board, as reflected by two legislators' submission during the rulemaking process, (*see* Jan. 21, 2014 Letter, at 1), became the "process due" under the Fourteenth Amendment. This is simply not the case. The Legislature's purported disapproval of the decision-making procedures formulated and adopted by the Board under § 8002.3 does not render those procedures insufficient under the Due Process Clause. The New York Legislature's directives to the Board with respect to the appropriate process for parole determinations do not alter the process due under the Constitution. *See Gordon v. Alexander*, 592 F. Supp. 2d 644, 650 (S.D.N.Y. 2009) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures." (citing *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003))); *see also Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983) ("The State may choose to require procedures . . . but in making that choice the State does not create an independent substantive right."); *Blouin v. Spitzer*, 356 F.3d 348, 363 (2d Cir. 2004) ("[F]ederal law, not state regulations, determines the procedures necessary to protect [a] liberty interest."); *Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir. 1979) ("Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that

15

merely establishes procedural requirements."); *cf. Richmond Boro Gun Club, Inc. v. City of New York*, 97 F.3d 681, 689 (2d Cir. 1996) ("When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process. The challenges to such laws must be based on their substantive compatibility with constitutional guarantees." (quotation marks omitted)).

As discussed in the Court's Opinion, Plaintiff identifies no *process* of which he was deprived due to the formulation and adoption of § 8002.3. Plaintiff received an interview at which he was asked multiple questions. (*See* Interview.) After deliberating, the interviewing Defendants explained the factors they "weighed and considered," and decided discretionary release was not appropriate due to safety concerns. (*Id.* at 14–15.) Similarly, the Defendants considering Plaintiff's appeal evaluated the record and Plaintiff's brief before affirming the Board's decision. (*See* Administrative Appeal Report and Recommendation.) That the formulation of § 8002.3 may have violated New York law by improperly including risk and needs principles as factors rather than as overarching principles does not render the process Plaintiff ultimately received inherently unfair or procedurally improper under the Constitution. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 16 (1979) ("The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more."); *Holcomb*, 337 F.3d at 224 ("Elevating a state-mandated procedure to the status of a constitutionally protected liberty or property interest, would make process an end in itself rather than a requirement whose constitutional purpose is to protect a substantive interest in which the individual has a claim of entitlement." (quotation marks omitted)); *Tatta v. Miller*, No. 05-CV-

1205, 2005 WL 2806236, at *3 (E.D.N.Y. Oct. 27, 2005) ("[T]he denial of [the inmate]'s application for parole comported with procedural due process, which, in this context, requires only that the inmate be given an opportunity to be heard and informed of the reasons for the denial of parole.").

Therefore, Plaintiff's claim that the formulation and adoption of § 8002.3 violated his right to due process under the Fourteenth Amendment fails on the merits.[5]

### 2. Eighth Amendment Claim

Defendants argue that Plaintiff's Fourth Amended Complaint still fails to plausibly allege an Eighth Amendment violation. (Defs.' Mem. 11–12.) This claim was previously dismissed because Plaintiff did "not allege that the interview process involved any application of pain or another serious deprivation of a necessity, such as food, medical care, or safety, nor does he allege that the process was without penological justification" as required to establish an Eighth Amendment violation. (Opinion 26.) Additionally, the Court rejected Plaintiff's argument that his parole denial extended his sentence, noting that "his maximum sentence is 50 years from 1992—a date that has not yet passed." (*Id.* at 27.)

Plaintiff's Fourth Amended Complaint does not allege any new facts that suggest Plaintiff has been subjected to cruel and unusual punishment under the Eighth Amendment. Plaintiff alleges that Defendants' actions caused him to "remain[] in prison without Procedural Due Process of Law," resulting in emotional distress, mental anguish, headaches, loss of sleep, heightened anxiety, and depression. (*See* FAC ¶¶ 46–47, 52–53.) Plaintiff's Opposition states

---

[5] Because Plaintiff's claim fails on the merits, the Court need not reach Defendants' argument that they are entitled to absolute legislative immunity for the formulation and adoption of § 8002.3. (*See* Defs.' Mem. 5.)

that "the complaint bespeaks the process was without penological justification," (Pl.'s Mem. 17), but does not otherwise explain how his allegations state an Eighth Amendment claim.

Plaintiff fails to cure the deficiencies of his prior complaints with respect to his Eighth Amendment claim. Plaintiff still does not allege that the process he received "involved the application of pain or another serious deprivation of a necessity," or that it improperly extended his sentence. (*See* Opinion 26–27.) Plaintiff's sole argument is that the denial of parole resulted in his remaining in prison; however, the Court has already explained that denial of parole is insufficient to state a claim under the Eighth Amendment. (*See id.* at 27.) *See also D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *10 (S.D.N.Y. Dec. 19, 2017) (holding that the plaintiff failed to state an Eighth Amendment Claim because he "was not held beyond his *maximum* sentence"); *Williams v. Carpenter*, 214 F. Supp. 3d 197, 202 (W.D.N.Y. 2016) ("A denial of parole or early release does not constitute cruel or unusual punishment, within the meaning of the Eighth Amendment."); *Sheppard*, 2011 WL 2610695, at *4 ("[T]he mere fact that [the plaintiff] has been denied parole does not violate any provision of the Constitution, much less the Eighth Amendment." (citations omitted)).

The Court therefore grants Defendants' Motion To Dismiss Plaintiff's Eighth Amendment claim. [6]

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. A complaint should be dismissed without prejudice if the pleading, "'liberally read,' suggests that the plaintiff

---

[6] Because the Court already dismissed both the Fourteenth Amendment and Eighth Amendment claims, it need not reach Defendants' alternative arguments that they are entitled to qualified immunity or that Plaintiff's damages claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (Defs.' Mem. 14–16.)

has a claim that []he has inadequately or inartfully pleaded and that []he should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and alterations omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). If a complaint, however, has substantive problems and "[a] better pleading will not cure [them]," "[s]uch a futile request to replead should be denied." *Id.* (citing *Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)). Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013). Because the Court finds that further amendment would be futile, Plaintiff's claims are dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 80), close this case, and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: February 5, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

19